UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM PETAWAY, | : |
| | : |
| Petitioner, | : |
| v. | : No. 3:09cv34 (MRK) |
| | : |
| THERESA LANTZ, | : |
| | : |
| Respondent. | : |

## RULING AND ORDER

Petitioner William Petaway, a Connecticut inmate currently confined at the Rhode Island Department of Correction High Security Center in Cranston, Rhode Island, brings this *pro se* Petition for a Writ of Habeas Corpus [doc. # 1] pursuant to 28 U.S.C. § 2254, challenging his state court conviction. For the reasons set forth below, the Court DENIES Mr. Petaway's petition.

## I.

On January 19, 2005, Mr. Petaway pleaded guilty to robbery in the first degree in violation of Connecticut General Statutes § 53a-134(a)(4). The plea was made pursuant to a *Garvin* agreement. A *Garvin* agreement is "a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." *State v. Wheatland*, 93 Conn. App. 232, 235 n.3 (discussing *State v. Garvin*, 242 Conn. 296, 300-02 (1997)), *cert. denied*, 277 Conn. 919 (2006) . The agreement provided that Mr. Petaway would plead guilty and receive ten years in prison, and that Mr. Petaway would promise to appear in court on any date required up to and through the date of his sentencing. The court accepted this plea agreement, and agreed to release Mr. Petaway pending sentencing, provided that he remain under house arrest, wear an ankle

bracelet, avoid any future arrests, and promise to appear in court. The court told Mr. Petaway that if he "[blew] curfew" or was "arrested for a new offense," the court would hold a hearing to determine whether he had violated those conditions. If the court found that he violated those conditions, it would sentence him to between ten and twenty years in prison. Mr. Petaway told the court that he understood the agreement and that he concurred in it. Sentencing was set for March 18, 2005.

Before March 18, the court received reports that Mr. Petaway had been arrested on an assault charge, and that he had violated the house arrest condition of his plea agreement several times. As a result, the court ordered the re-arrest of Mr. Petaway. On April 12, 2005, Mr. Petaway appeared before the court, and the court granted Mr. Petaway's motion to dismiss his current attorney. On May 31, 2005, Mr. Petaway appeared before the court with new counsel and submitted two motions: (1) a motion to withdraw his plea, and (2) a motion to disqualify the trial judge from further presiding over his case. The court denied Mr. Petaway's motion to disqualify, reasoning that "[t]he motion to disqualify goes to the sentencing phase, not to the motion to withdraw." For other reasons, the trial judge did disqualify himself from the sentencing phase of the case. The court denied Mr. Petaway's motion to withdraw his plea.

On June 29 and July 1, 2005, the court – presided over by a new judge – held an evidentiary hearing on the issues of (1) whether the conditions of the *Garvin* agreement stipulated to by the parties were valid and enforceable; and (2) whether Mr. Petaway had violated those conditions. On July 14, 2005, the court ruled that both conditions were enforceable, and that it was "beyond a reasonable doubt" that Mr. Petaway had violated both conditions. On August 19, 2005, the court sentenced Mr. Petaway to twelve-and-one-half years in prison, on the basis of Mr. Petaway's *Garvin*

agreement.

Mr. Petaway appealed his conviction to Connecticut's appellate division, claiming that (1) the original trial judge improperly refused to disqualify himself from adjudicating Mr. Petaway's motion to withdraw his plea; (2) the court improperly denied Mr. Petaway's motion to withdraw his guilty plea after improperly imposing (a) a twenty-four hour house arrest condition and (b) a "no arrest" condition as part of the *Garvin* agreement; and (3) the court improperly used probable cause, instead of preponderance of the evidence, as the standard to determine whether Mr. Petaway had breached the *Garvin* agreement. The Connecticut Appellate Court rejected all three of these claims, and affirmed the judgment of the trial court. *State v. Petaway*, 107 Conn. App. 730, 732 (2008) ("*Petaway II*"). Mr. Petaway then sought certification for an appeal to Connecticut's Supreme Court. Certification was denied. *See State v. Petaway*, 289 Conn. 926 (2008).

## II.

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 104, 110 Stat. 1214, 129, a federal court may not grant "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" unless the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see Yarborough v. Alvarado*, 541 U.S. 652, 655 (2004); *Portalatin v. Graham*, --- F.3d ---, 2010 WL 4055571, at *7 (2d Cir. 2010) (en banc); *Ancona v. Lantz*, No. 3:05cv363 (MRK), 2005 WL 1554029, at *1 (D. Conn. July 5, 2005). Thus, when faced with a state prisoner's petition for a writ of habeas corpus, a federal court must ask three questions: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly

3

established' when the state court ruled?; (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent?; (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001).

Regarding the first inquiry, only holdings of the Supreme Court, not the Second Circuit, can provide a basis for habeas relief. *See DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002) ("[A]fter AEDPA, [a Second Circuit decision] cannot serve as a basis for federal habeas relief under Section 2254 [unless] it has [a] counterpart in Supreme Court jurisprudence."). Moreover, the Second Circuit has instructed that "the statutory phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) (citations and alteration omitted). That said, "although the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002).

Regarding the second inquiry, the Second Circuit has explained that a state court decision is contrary to existing Supreme Court precedent when the state court decision "applies a rule of law that contradicts the governing law set forth in Supreme Court cases," or when it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 156 (2d Cir. 2009) (quotation marks, citations, and alterations omitted). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." *Lurie*

*v. Wittner*, 228 F.3d 113, 127 (quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Regarding the third inquiry, as this Court discussed at length in *Ancona v. Lantz*, the Supreme Court has provided substantial guidance to lower courts on how to analyze claims under the third, "unreasonable application" inquiry. *See* 2005 WL 839655, at *3-5. In sum, two key principles emerge from the Supreme Court's decisions.

First, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. An objectively unreasonable application of federal law is different from an incorrect or erroneous application of federal law. *See Brown v. Payton*, 544 U.S. 133, 147 (2005). As the Second Circuit has stated, "the AEDPA standard requires 'some increment of incorrectness beyond error.'" *Christie v. Hollins*, 409 F.3d 120, 125 (2d Cir. 2005) (citations and alterations omitted).

Second, in assessing the reasonableness of a state-court adjudication, the range of reasonable judgment can depend upon the nature of the rule at issue. For a specific legal rule, "the range may be narrow" – either "plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. Other rules are more general, however, affording state courts "more leeway" in reaching determinations on a case-by-case basis. *See id.*

### III.

With those principles in mind, the Court turns to consider each of Mr. Petaway's claims. Mr. Petaway asserts four grounds for issuance of a writ of habeas corpus:

1. The original trial judge improperly refused to recuse himself from a hearing

5

at which the court adjudicated Mr. Petaway's motion to withdraw his plea;

2. The imposition of a prison sentence longer than ten years because Mr. Petaway breached the "house arrest" condition of his plea agreement was unconstitutional;

3. The imposition of a prison sentence longer than ten years because Mr. Petaway breached the "no arrest" condition of his plea agreement was unconstitutional; and

4. The court applied an unconstitutional burden of proof at the evidentiary hearing to determine whether Mr. Petaway had breached the plea agreement.

*See* Pet. [doc. # 1], at 9-15. The Court finds that Mr. Petaway's second, third, and fourth claims were properly exhausted. Mr. Petaway's first claim was presented in state court only as a state law issue. However, for the purposes of its analysis, the Court will assume that this ground, too, has been fully exhausted. *See* 28 U.S.C. § 2254(b)(2).

**A.**

The first ground asserted in Mr. Petaway's petition, that the original trial judge improperly refused to recuse himself from deciding Mr. Petaway's motion to withdraw his plea, was presented in state court as a state law issue. Hence, Mr. Petaway has not met AEDPA's requirement that all claims brought in federal court first be fully exhausted in the state courts. *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). However, even if the Court treats this ground as a fully exhausted claim, it provides no basis for granting Mr. Petaway's petition. The standard for evaluating Mr. Petaway's claim is whether the state court's decision was an unreasonable application of settled federal law. It was not.

"[O]nly in the most extreme of cases would disqualification on [the] basis [of bias or prejudice] be constitutionally required," *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986),

namely when a judge has a "direct, personal, substantial, pecuniary interest in reaching a conclusion against [the criminal defendant]." *Id.* (citation and quotation marks omitted). There is no objective reason why the trial judge should have recused himself from ruling on Mr. Petaway's motion to withdraw his plea. As the Appellate Court noted, the trial judge "did not demonstrate any conduct that might lead a reasonable person to question his impartiality." *See Petaway II*, 107 Conn. App. at 739. Furthermore, the judge did recuse himself from the sentencing phase of the case. Accordingly, Mr. Petaway's first argument does not provide a basis for granting his petition.

**B.**

Mr. Petaway next asserts that the trial court enhanced Mr. Petaway's sentence for violation of a condition that Mr. Petaway never agreed to. The Court construes the third ground stated by Mr. Petaway as a federal due process claim. There is nothing to support Mr. Petaway's suggestion that the imposition of the higher sentence on the ground that he violated the "house arrest" condition of his plea agreement violated his due process rights. The Supreme Court has held that the Constitution demands that a defendant may only enter a guilty plea that is "voluntary" and that the defendant must make related waivers "knowingly, intelligently, [and] with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

In Mr. Petaway's case, the trial court held an evidentiary hearing to determine whether Mr. Petaway had violated any of the conditions of his release, and the court found that the transcript of the proceeding in which the court approved the *Garvin* agreement showed that Mr. Petaway had agreed to 24-hour home detention. The Connecticut Appellate Court's determination that "the [trial] court did not abuse its discretion in denying [Mr. Petaway's] motion to withdraw his guilty plea" because Mr. Petaway "did not prove that his plea was made involuntarily or without knowledge of

7

the conditions to which he agreed," *Petaway II*, 107 Conn. App. at 743, was neither contrary to nor an unreasonable application of the relevant federal law.

## C.

Citing the Connecticut Appellate Court's holding in *State v. Stevens*, 85 Conn. App. 473 (2004), Mr. Petaway next argues that the "no arrest" condition in his plea agreement was illegal under state law at the time of the agreement. This Court's inquiry, however, is limited to the question of whether the adjudication of Mr. Petaway's case in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established *Federal* law." *See Williams*, 529 U.S. at 399 (emphasis added). There is no Supreme Court decision prohibiting "no arrest" conditions in plea agreements. Federal prisoners are routinely released and told not to commit a federal, state, or local offense as a condition of release. Therefore, there was no unreasonable application of federal law in the state appellate court's determination that the "no arrest" condition of Mr. Petaway's plea agreement was valid.

## D.

Mr. Petaway's final challenge to his state court conviction is based on an allegation that the trial court applied the wrong burden of proof when it determined that Mr. Petaway had violated the conditions of his plea agreement. Specifically, Mr. Petaway alleges that the court applied a "probable cause" standard when it should have applied a "preponderance of the evidence" standard. As the Connecticut Appellate Court noted, Mr. Petaway's argument that "[the second trial judge] used the probable cause standard . . . is not supported by the record." *See Petaway II*, 107 Conn. App. at 746. In fact, the transcript of the evidentiary hearing indicates that in reviewing Mr. Petaway's alleged violation of the conditions of his release, the trial court was concerned that a

8

preponderance of evidence standard might be too low. *See* Hr'g Tr. [doc. # 5] at 32. The court thus determined whether the evidence showed that it was *beyond a reasonable doubt* that Mr. Petaway had violated the conditions of his release. *See id.* This may have been a stricter standard than state law required, and it certainly benefitted Mr. Petaway. Regardless, under existing Supreme Court precedent, there is no constitutional minimum standard for proving violations of plea agreements. *See McMillan v. Pennsylvania*, 477 U.S. 79, 92 (1986). There was no unreasonable application of Supreme Court precedent by the Connecticut Appellate Court in its determination that the trial court "did not violate [Mr. Petaway's] right to due process by utilizing the highest standard of proof beyond a reasonable doubt." *See Petaway II*, 107 Conn. App. at 746.

### III.

Having rejected each of the grounds asserted in support of Mr. Petaway's petition, the Court DENIES his Petition for a Writ of Habeas Corpus [doc. # 1]. Furthermore, because Mr. Petaway has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. **The Clerk is directed to enter judgment for Respondent and to close this file.**

IT IS SO ORDERED.

/s/     Mark R. Kravitz
        United States District Judge

**Dated at New Haven, Connecticut: October 27, 2010.**